**Clarence J. WENDLER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 84–1361–K.**

United States District Court, D. Kansas.

Jan. 16, 1985.

John Shirley, Scott City, Kan., J. Scott Hamilton, Denver, Colo., for plaintiff.

Emily M. Trapnell, Torts Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., for F.A.A.; Walter Welch and Jerry Jones, Washington, D.C., of counsel.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

Plaintiff Clarence J. Wendler, a commercial pilot, has brought this Federal Tort Claims Act (FTCA) suit against defendant United States of America (United States). Plaintiff seeks damages claiming defendant's agent, Federal Aviation Administration (FAA), was negligent in issuing an emergency suspension of plaintiff's commercial pilot's certificate and was negligent in processing plaintiff's application for reissuance of the certificate. This action is before the Court on United States' motion to dismiss. For reasons stated below, United States' motion is granted.

The facts as alleged in plaintiff's petition are as follows: Prior to September 29, 1980, plaintiff held a commercial pilot certificate and an airman medical certificate issued by FAA. These certificates were needed by plaintiff to engage in his commercial crop dusting business in Lane County, Kansas.

On September 29, 1980, FAA issued an emergency suspension of plaintiff's commercial pilot certificate upon the recom-

mendation of Dr. John Malina, Regional Flight Surgeon for FAA.

On October 6, 1980, plaintiff appealed the suspension to the National Transportation Safety Board (NTSB).

On November 17, 1980, plaintiff's appeal was dismissed by stipulation between plaintiff's attorney and counsel for FAA. The stipulation provided that plaintiff was to reapply for his airman medical certificate and supply certain information to FAA. In return, FAA promised to expedite plaintiff's reapplication and reissue his certification upon proof of qualification.

Plaintiff asserts FAA was negligent in issuing the suspension and was negligent in processing plaintiff's reapplication for his airman medical certificate and commercial pilot certificate. Plaintiff also asserts these certificates were not reissued to him until October 30, 1981, 13 months after issuance of his emergency suspension, despite FAA's actual knowledge as of October 16, 1980, that there was no reasonable ground for the suspension or for refusing to reissue the certification.

Plaintiff alleges FAA owed him a duty to exercise due care before issuing the suspension and owed him a duty to promptly process his reapplication. Plaintiff claims these duties were breached, and as a result he suffered $240,600.00 in lost income and $125,000.00 in mental anguish.

This being a motion to dismiss, plaintiff is entitled to the benefit of any factual doubts. *Ammon v. Kaplow*, 468 F.Supp. 1304, 1309 (D.Kan.1979). In addition, the allegations of Wendler's complaint must be taken as true to the extent they are not contradicted by affidavits. *Wyatt v. Kaplan*, 686 F.2d 276, 282 n. 13 (5th Cir.1982) (citing *Black v. Acme Markets, Inc.*, 564 F.2d 681, 683 n. 3 (5th Cir.1977).

United States asserts it is entitled to have Wendler's action dismissed for the following reasons: (1) plaintiff's complaint fails to state a claim upon which relief may be granted; (2) the acts by FAA fall within the discretionary function exception of the FTCA, 28 U.S.C. § 2680(a); and (3) the acts by FAA fall within the interference with contract exception of the FTCA, 28 U.S.C. § 2860(h).

Because there are sufficient grounds to dismiss Wendler's action based upon the discretionary function exception of the FTCA, there is no need to address the other asserted grounds for dismissal.

The discretionary function exception of the FTCA, 28 U.S.C. § 2680(a), provides:

The provisions of this chapter and section 1346(b) of this title shall not apply to—

Any claim based upon an act or omission of an employee of the government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused.

The controlling authority interpreting this discretionary function exception is *United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) et al.*, —— U.S. ——, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) (Varig). In *Varig*, Chief Justice Burger, expressing the *unanimous* view of the court, held the discretionary function exception to the FTCA (28 U.S.C. § 2680(a)) immunizes United States and precludes a tort action based upon FAA's conduct in its aircraft certification process, which process places the duty to insure that an aircraft conforms to safety regulations on the manufacturer and operator, and places on FAA the role of policing the conduct of private individuals by monitoring their compliance with federal regulations by means of a spot check program.

In so holding, Chief Justice Burger stated:

... it is possible to isolate several factors useful in determining when the acts of a Government employee are protected from liability by § 2680(a). First, it is the nature of the conduct, rather than the status of the actor, that governs

whether the discretionary function exception applies in a given case. As the Court pointed out in *Dalehite* [*v. U.S.*], the exception covers "[n]ot only agencies of government . . . but all employees exercising discretion." 346 U.S. [15] at 33, 73 S.Ct. [956] at 966 [97 L.Ed. 1427]. Thus, the basic inquiry concerning the application of the discretionary function exception is whether the challenged acts of a Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability.

Second, whatever else the discretionary function exception may include, it plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals. Time and again the legislative history refers to the acts of regulatory agencies as examples of those covered by the exception, and it is significant that the early tort claims bills considered by Congress specifically exempted two major regulatory agencies by name. See *supra*, at — [104 S.Ct. at 2763]. This emphasis upon protection for regulatory activities suggests an underlying basis for the inclusion of an exception for discretionary functions in the Act: Congress wished to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. By fashioning an exception for discretionary governmental functions, including regulatory activities, Congress took "steps to protect the Government from liability that would seriously handicap efficient government operations." *United States v. Muniz*, 374 U.S. 150, 163, 83 S.Ct. 1850, 1858, 10 L.Ed.2d 805 (1963).

— U.S. at ——, 104 S.Ct. at 2765, 81 L.Ed.2d at 674–75 (footnotes omitted).

The above language in *Varig* controls the outcome of the case at bar. In addition, this Court agrees with the court's statement in *Flammia v. United States*, 739 F.2d 202 (5th Cir.1984), that: "[w]e view the language of *Varig Airlines* to dictate that the exemption under the Federal Tort Claims Act derived from this discretion extends to specific individual applications as well as to broad policies." 739 F.2d at 204. For several reasons, the present action is one of those cases of "specific individual application."

First, medical determinations concerning public safety are inherently discretionary. In *Beins v. United States*, 695 F.2d 591 (D.C.Cir.1982), a factually analogous case to the case at bar which defendant relies upon, the court stated:

Finally, we note that some medical standards do require the FAA to balance a medical judgment with a calculation of whether the applicant's medical condition permits him to perform his duties safely. . . .

This language [of 14 C.F.R. § 67.-13(d)(2)(ii), .15(d)(2)(ii)(d)(2)(ii) (1982).] requires the air surgeon to use his medical judgment to determine whether the applicant suffers or has suffered a convulsive disorder, disturbance of consciousness, or neurologic condition. Then he must analyze the scope of any such problem. Finally, the air surgeon has to decide whether the condition would make the pilot unable to perform his duties safely at present or within two years. In this case, we find that this last step—the determination under this regulation of whether appellant's possible neurologic problems made him unable to perform his duties or exercise his privileges safely—left the air surgeon a range of policy judgment, albeit a narrow one. In making his decision, the air surgeon had to evaluate how, and the likelihood that, appellant would have future neurologic problems that could impinge on his performance as a pilot. Then the air surgeon had to calculate the possible effects of the problems on air safety. This was not just a matter of testing known medical facts against a clear medical standard. For these reasons, we conclude that the specific determinations of the air surgeon about this appellant's neurological fitness constitute an exercise of dis-

cretion under the terms of the exception in 28 U.S.C. § 2680(a).

695 F.2d at 603–05.

Second, because the medical licensing authority of FAA is unparalleled in the private sector, this case is clearly one where the government is "acting in its role as regulator of the conduct of private individuals." This proposition has support in the Tenth Circuit. In *McMann v. Northern Pueblos Enterprises, et al.*, 594 F.2d 784 (10th Cir.1979), the Tenth Circuit Court of Appeals held because the Miller Act deals with federal contracts, a private party could never be in a position to require a Miller bond, and thus could never be liable for failure to require the bond. *Id.* at 786; *see also, Arvanis v. Noslo Engineering Consultants, Inc.*, 739 F.2d 1287, 1290 (7th Cir.1984).

Another reason *Varig* controls the present action is because the policy of "not wanting to handicap efficient government operations" would not be furthered by allowing plaintiff to pursue this suit. In a case interpreting *Varig*, the court in *Proctor v. United States*, No. 83–3415 AWT, Aug. 23, 1984 (C.D.Cal.), mindful of this policy, stated:

> The (...) entire FAA certification process is immune from potential tort liability.

*Id.* If the process involved in the present action was not immune, the policy that Congress took "steps to protect the government from liability that would seriously handicap efficient government operations" would be defeated. Such would be the case if the air surgeon's medical determination to suspend and the determination process to reissue plaintiff's airman medical certificate were influenced by the fear of a tort suit.

Moreover, the better policy is to err in favor of grounding a pilot of suspect qualifications. This, because as noted in *Delta Airlines v. United States*, 490 F.Supp. 907 (N.D.Ga.1980), FAA's obligation and responsibility to the public at large outweigh its responsibility to the individual pilot. *Id.* at 917. In addition, as stated by the court in *Delta Airlines*, FAA's very purpose is to:

> ... promote air safety and to require the air carriers "to perform their services with the highest possible degree of safety in the public interest." Exemptions which are merely in the private, economic interest of the individual airman may not be granted, since exemptions may not be used simply for the "alleviation of personal hardship cases." *Starr v. FAA*, 589 F.2d 307, 312 (7th Cir.1978). The rationale for this holding has been succinctly stated by the Fifth Circuit: "It is well known that there is very little second chance given to one who loses control of an aircraft, particularly during critical periods of flight...."

490 F.Supp. at 918.

Finally, because in *Beins* the court held medical determinations involving the safety of the public at large involve some policy judgment, and the Supreme Court's statement in *Varig* that "[w]here there is room for policy judgment and decision there is discretion.", 104 S.Ct. at 2764, the acts of FAA in issuing the emergency order of suspension of plaintiff's airman medical certificate and commercial pilot certificate and the acts of FAA in handling plaintiff's reapplication for certification were discretionary. Thus, they fall under 28 U.S.C. § 2680(a), and this Court lacks subject matter jurisdiction to hear plaintiff's case.

IT IS THEREFORE ORDERED this 16 day of January, 1985, that defendant United States of America's motion to dismiss this cause of action is granted.