**Robert T. SEILER, et al., Plaintiffs,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. A. No. 86–0964.**

United States District Court, District of Columbia.

March 13, 1987.

Dildine & Dildine, Washington, D.C., Ellen G. Donovan, Christiansted, St. Croix, Virgin Islands, for plaintiffs.

Sheri L. Orlowitz, Trial Atty., Torts Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for defendant.

**MEMORANDUM**

HAROLD H. GREENE, District Judge.

Plaintiff Robert T. Seiler, a commercial airline pilot, along with his wife Martha Seiler, brought this action pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 *et seq.* Plaintiffs challenge the refusal of the Federal Aviation Administration (FAA) to grant Mr. Seiler a first-class medical certificate between June 11, 1981 and March 1, 1983, causing him to suffer a loss of his livelihood, as well as mental anguish, and causing his wife the loss of services and companionship. Mr. and Mrs. Seiler allege that the FAA illegally failed to comply with an order of the National Transportation Safety Board (NTSB) requiring the issuance of such a certificate, and they seek $275,000 and $50,000, respectively, in damages. Defendant has moved for summary judgment on the grounds, first, that this Court may not review these claims under the Act, and second, that Mr. Seiler was himself solely responsible for the delay in acquiring the certificate. For the reasons stated below, the motion is granted, and this case is dismissed.

I

The material facts are undisputed. In February 1979, plaintiff Robert Seiler suffered a seizure while piloting an Eastern Caribbean Airlines plane. Two months later, he underwent surgery for the removal of a large brain tumor; this surgery is known as a "bifrontal craniotomy." On August 24, 1979, plaintiff applied for a first-class medical certificate from the FAA. A first-class certificate is necessary to operate a commercial aircraft that carries passengers. The certificate is only valid for six months.[1] An Aviation Medical Examiner[2] promptly denied the certificate and referred the application to the Federal Air Surgeon. That official found that plaintiff might experience additional sei-

---

1. Medical certificates for private pilots are valid for two years. 14 C.F.R. § 61.23.

2. Aviation Medical Examiners are physicians designated by the FAA to perform medical examinations on applicants, analyzing such factors as vision, mental health, and neurological health. These examiners are not employees of the FAA.

zures within the next two years, and he denied the certificate on October 31, 1979.[3]

Plaintiff appealed this denial to the NTSB. After a hearing, an administrative law judge reversed the FAA's ruling and ordered that:

the Federal Air Surgeon on behalf of the Administrator shall issue to the Petitioner an appropriate airman medical certificate *on the making of an appropriate application by the Petitioner* and barring any other physical disability or disqualification upon such application.

*See In re Seiler*, No. SM–2512 (NTSB Feb. 12, 1981) (emphasis added). The FAA appealed this decision to the full Board, which affirmed the ALJ's decision. The Board ordered that "a first-class medical certificate be issued to the petitioner upon his reapplication, provided he is otherwise and fully qualified therefor." The Board denied the FAA's petition for reconsideration on June 5, 1981.

Pursuant to the Board's order, plaintiff again applied for a first-class medical certificate on June 11, 1981. The American Medical Examiner, pursuant to regulations, forwarded the application to the Federal Air Surgeon,[4] who informed plaintiff that he must submit a current neurological evaluation, a CAT scan, and an EEG with "actual tracing." Plaintiff refused to comply with these requests, pointing out that these tests were "essentially the same tests I underwent to prove my qualifications before the NTSB a year earlier."[5] Meanwhile, plaintiff underwent further surgery for an infection at the site of the previous tumor. He underwent a CAT scan and decided to submit the report to the FAA,

but did not submit an EEG with actual tracing or a neurological evaluation.

Because the CAT scan showed an abnormality, the Federal Air Surgeon asked for a new CAT scan. Plaintiff complied with this request, but by June 23, 1982, he still had not submitted the neurological evaluation and full EKG. Nevertheless, plaintiff was informed in writing by the Manager of the Aeromedical Standards Division of the Office of Aviation Medicine on September 22, 1982, that "certification is likely if our review of the requested EEG tracing confirms the favorable report."[6]

On February 7, 1983, plaintiff submitted the remaining documents. Ten days later, the Federal Air Surgeon informed him in writing that the results were acceptable, and that he would qualify for a first-class certificate. Plaintiff reapplied on March 3, 1983, and was issued his certificate the same day.[7]

## II

In order to decide whether defendant is entitled to judgment as a matter of law, the Court need only interpret the meaning of the ALJ's order and its affirmance by the NTSB, within the context of FAA safety regulations. As already indicated, the ALJ required the Federal Air Surgeon to issue a first-class certificate to plaintiff "on the making of an appropriate application," and the NTSB affirmed this decision by ordering issuance "upon [plaintiff's] reapplication, provided he is otherwise and fully qualified therefor."[8] The NTSB's order was consistent with FAA regulations, which require the agency to issue a certificate to any properly qualified and physically able applicant. As the Court of Appeals

3. The Federal Aviation Regulations require the FAA to determine whether any current symptoms of neurological impairment are sufficient to disqualify a pilot, or whether there is a reasonable expectation that such symptoms may occur within two years. 14 C.F.R. § 67.-13(d)(2)(ii).

4. These regulations *require* the American Medical Examiner to forward an application if the applicant has previously been denied a certificate. *See* Office of Aviation Medicine, Guide for Aviation Medical Examiners 11 (Defendant's Exhibit 19).

5. Letter from Robert T. Seiler to H.L. Reighard, M.D., Federal Air Surgeon, February 23, 1982 (Defendant's Exhibit 7).

6. Letter from William H. Hark, M.D., to Robert T. Seiler (Defendant's Exhibit 11).

7. Plaintiff was required to re-apply because his application of June 1981 had expired.

8. *In re Seiler*, No. SM–2512 (NTSB Feb. 12, 1981).

for this Circuit has recognized, the FAA has no choice in the matter; "if an applicant meets the medical standards, the FAA *must* certify him." *Harr v. United States,* 705 F.2d 500, 503 (D.C.Cir.1983) (emphasis added).[9]

Plaintiff seems to believe that he need only have presented himself to an FAA medical examiner, at any time after the March 10 order, in order to receive his certificate automatically. The government, on the other hand, argues that, like any other applicant for a first-class license, plaintiff still had to provide current information on his physical condition before a certificate would issue; without such information, plaintiff's application could hardly be "appropriate." The government's position is correct according to the law and the policy supporting it.

Congress had authorized the FAA to issue medical certificates to fliers who are qualified and who are "physically able to perform" their duties. 49 U.S.C. § 1422. In order to guarantee these physical abilities, the FAA issued regulations "determine[d] to be necessary to assure safety in air commerce." *Id.* As many courts have recognized, it is indisputably the purpose of these rules "to promote safe air travel, and to protect the lives and property of people on the ground as well as of air travelers." *National Organization for Reform of Marijuana Laws v. Mullen,* 608 F.Supp. 945 (N.D.Cal.1985).

One of these FAA rules requires renewal of first-class medical certificates for airline transport pilots—the pilots who fly the large commercial airplanes—every six months. *See* 14 C.F.R. § 61.23(a)(1). This point can hardly be stressed too much: no matter who applies for a certificate, the FAA is authorized, and in fact expected, to request current medical data, such as EEG and neurological results and CAT scans. But when plaintiff reapplied for his certificate on June 11, 1986, his medical data was already at least ten months old. Thus, this data was not "current" within a licensing system that requires renewals every six months. Plaintiff need only have submitted new, satisfactory data, and the certificate would have issued; there is no hint that the FAA had any insidious designs here. In fact—another point that cannot be overemphasized—the FAA issued the certificate as soon as plaintiff provided updated test results, after repeatedly cajoling plaintiff to send these results in to the agency. Plaintiff chose to wait more than a year and a half to submit the required data, because he insisted that his own interpretation of the NTSB order was correct. Thus, he chose to create his own injury. Meanwhile, the FAA chose to satisfy its statutory duty: to make the skies as safe as possible, by ensuring that all commercial pilots have clearly been medically qualified for the past six months. The FAA's care was well justified in this case, for soon after plaintiff began refusing to provide updated data, he entered the hospital for further surgery on his brain.

According to plaintiff, the FAA should have issued him a first-class certificate as soon as he reapplied for one—presumably, even if he had waited six more months, or a year more, or two. On that view, the FAA could not ensure that he still was medically qualified, even though it was ensuring that fact about every other commercial pilot in this nation, every six months, and although the NTSB order specifically conditioned the requirement of a new medical certificate upon the conclusion by the FAA that plaintiff was "otherwise and fully qualified therefor." According to plaintiff, his entitlement to a certificate was absolute, regardless of public danger, and he stubbornly pursued this theory, ultimately as his own expense. If plaintiff's theory were

9. Thus, the FAA had no discretion to exercise in this matter, and this Court need not decline to review this case pursuant to the "discretionary function" exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a). To put it another way, the Court fully agrees that the FAA had to issue this certificate once plaintiff demonstrated that he was "qualified and physically able." In fact, the FAA did issue this certificate as soon as plaintiff demonstrated this with current information.

correct, if he had developed a serious neurological condition between his previous tests and the date of reapplication, the FAA would have been powerless to prevent him from transporting hundreds of passengers for thousands of miles.

One federal district court has only recently had occasion to say that the "FAA's obligation and responsibility to the public at large outweigh its responsibility to the individual pilot." *Wendler v. United States,* 606 F.Supp. 148, 151 (D.Kan.1985). This is not to say that the FAA may arbitrarily deprive a pilot of a medical certificate simply because it imagines some benefit to society. But it does not follow that any pilot, simply by refusing to comply with reasonable procedures, is able to force the agency to risk the public health and welfare. Had plaintiff provided the current medical data in timely fashion, one of three results could theoretically have occurred: the agency would have immediately issued the certificate (as it ultimately did); or the agency would have discovered a serious medical problem that threatened plaintiff's ability to fly (as might have been the case, given plaintiff's second surgery); or the agency would have refused to issue a certificate to plaintiff without adequate medical cause, in which case plaintiff would have received an injunctive order against the agency. As it turned out, the agency acted properly in postponing action pending the necessary medical examination.

For the reasons stated, defendant's motion for summary judgment is granted, and the action is dismissed.