Caster WOOD, Appellee,

v.

STANDARD PRODUCTS COMPANY, INC., United States of America, Defendants,

and

Dr. Robert E. Beatley, Appellant.

Caster WOOD, Appellee,

v.

STANDARD PRODUCTS CO., INC., Defendant,

United States of America, Appellant,

Dr. Robert E. Beatley, Defendant.

Nos. 81–1172, 81–1173.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 4, 1981.

Decided Feb. 24, 1982.

Susan M. Sleater, Civ. Div., Dept. of Justice, Washington, D. C. (Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., Justin W. Williams, U. S. Atty., Alexandria, Va., Robert S. Greenspan, Civ. Div., Dept. of Justice, Washington, D. C., on brief), for appellant United States of America.

William M. Sexton, Norfolk, Va. (Thomas J. Harlan, Jr., Doumar, Pincus, Knight & Harlan, Norfolk, Va., on brief), for appellant Dr. Robert E. Beatley.

Alan W. Clarke, Lively, Va. (Clarke & Johnston, Lively, Va., Christopher Allen Meyer, Allen, Allen, Allen & Allen, Richmond, Va., on brief, for appellee.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

These appeals involve two claims of error by two separate appellants in connection with a single action in tort. The first claim, asserted by the appellant United States of America, presents for decision the question whether a "contract physician" of the United States Public Health Service (PHS), who had treated medically the plaintiff pursuant to § 249, 42 U.S.C.,[1] was an "employee" of the United States, for whose alleged negligence the United States was liable under the Federal Tort Claims Act (FTCA).[2] The district court held, after a hearing confined

---

1. This statute provides for the treatment without charge of injured seamen-fishermen.

2. §§ 2671 and 2674, 28 U.S.C. The jurisdiction of the district court over such claim is fixed by § 1346(b), 28 U.S.C.

to the question of the "contract Physician's" status, that he was an employee of the United States. It then conducted an abbreviated and substantially *ex parte* hearing on a *prima facie* showing of alleged negligence by the physician. As a result of this hearing, it granted judgment in favor of the plaintiff-seaman against the United States.[3]

The second claim is raised by the "contract physician" himself, even though he had earlier been dismissed as a party defendant on the basis of a Covenant Not to Sue executed by the plaintiff in favor of the "contract physician." After the United States had been held by the district court to be liable for the action of the "contract physician" and was proceeding to address the issue whether such physician had been *prima facie* negligent, Dr. Beatley, the "contract physician" moved to intervene in order to participate in contesting that issue. The district court denied the motion.

The United States has appealed from the district court's ruling that Dr. Beatley was its employee for whose negligence it was liable under the FTCA and, failing in that, from the district court's refusal to allow it the right to contest the plaintiff's *prima facie* evidence of negligence. Dr. Beatley, in turn, has appealed the denial of his motion to intervene. We reverse the judgment against the United States and affirm the denial of Dr. Beatley's motion to intervene.

The facts out of which this action arises are largely stipulated and are not in any substantial dispute. The plaintiff was a fisherman-seaman entitled to medical care by the PHS under § 249, 42 U.S.C. While he was employed as a fisherman on a vessel operating in navigable waters, a fishbone became stuck in his left third finger.[4] He secured from the captain of the vessel a "Master's Certificate of Service," and applied to Dr. Beatley, a "contract physician" under an agreement with the PHS for medical attention.[5] Dr. Beatley furnished outpatient care to him on several occasions in connection with the fishbone injury. A secondary infection developed in the hand, which eventually led to the amputation of the plaintiff's forearm.

As a result of the loss of his forearm the plaintiff sued Dr. Beatley, the United States, and his employer, Standard Products Company, Inc., for negligence.[6] The theory on which the plaintiff predicated liability on the part of the United States was that Dr. Beatley was an agent or employee of the United States, for whose negligence in plaintiff's treatment the latter was liable under the FTCA; plaintiff's claim against his employer was based on theory that Dr. Beatley was the agent of Standard Products Company, Inc., and that Standard was thus liable for any negligence by Dr. Beatley in his treatment of the plaintiff.

The sequence of proceedings in the case, after joinder of issues, was somewhat unusual. Early in the proceedings, the district court bifurcated the proceedings, so far as the United States was concerned, by providing that the issue of negligence on the part of Dr. Beatley should be determined prior to resolving whether the relationship of Dr. Beatley to the United States was that of an employee or agent. In the order of bifurcation the district court stated:

> "The United States denies that the public health physician, Dr. Beatley, who treated the plaintiff in this case, was its agent for purposes of treating the plaintiff. The United States takes no position as to whether or not Dr. Beatley was negligent in such treatment. If it be

---

3. The district court's opinion is reported at 494 F.Supp. 792.

4. Section 249(a)(8) includes within the class of persons entitled under the statute to "medical ... treatment ... without charge" to "[p]ersons ... who are engaged in commercial fishing operations ...."

5. 42 C.F.R. § 32.14(a), requires the seaman to secure such a certificate as an authorization for medical service under § 249, 42 U.S.C.

6. The defendant Standard Products Company, Inc. was early dismissed as a defendant and took no part in the subsequent trial of the action.

shown by appropriate proof that Dr. Beatley was negligent, then the United States will defend this action only on the ground that he was not their agent for purposes of such medical treatment of plaintiff."

It appears that the concession referred to in the bifurcation order, whereby the government agreed that it would not contest the claim of negligence against Dr. Beatley, was made by an Assistant United States Attorney at a pretrial conference. Such concession, however, was withdrawn by the Assistant United States Attorney the next day with the consent of the district judge. At a later hearing, however, the district court found on the basis of what the Assistant United States Attorney said an official in the Justice Department told him that the concession as made earlier by the Assistant United States Attorney had in effect been authorized by the Department of Justice. It accordingly found, over the objection of the United States, "that the United States did not intend to participate in any trial of the negligence issue and would litigate the agency question if an adverse decision was reached on negligence." It held, on the basis of that finding, that the United States was precluded from contesting on the merits the claim of negligence against Dr. Beatley and had limited itself to the legal defense that Dr. Beatley, in rendering medical attention to the plaintiff was not its employee.

Under the terms of the bifurcation order the negligence issue, as it related only to the defendant Beatley, was first heard before a Medical Malpractice Review Panel under the state practice.[7] That panel, after

a hearing, filed its opinion finding that Dr. Beatley was not negligent. Thereafter negotiations were had between Dr. Beatley's insurance carrier and the plaintiff which resulted in a Covenant Not to Sue executed by the plaintiff in favor of the defendants Standard Products Company, Inc. and Dr. Robert Beatley.[7a] An order of dismissal in favor of Dr. Beatley and Standard Products Company, Inc. was thereafter entered. The sole remaining defendant was accordingly the United States.

At this point the cause proceeded to trial to determine whether Dr. Beatley was an employee or agent of the United States, for whose negligence, if any, the United States would be liable under the FTCA.[8] After a trial of this issue, the district court filed its order finding Dr. Beatley an agent and employee of the United States. Following the entry of this order, the district court directed the plaintiff simply "to present a prima facie case of Dr. Beatley's negligence." In so doing, it prescribed: "[T]he United States will not be permitted to take a position on the nature or the adequacy of the proof. Proof of negligence may be in the form of affidavits, exhibits, and the like filed with the Court for the Court's determination of whether a prima facie case exists, or, if plaintiff desires, proof may be adduced before a jury."

At this juncture in the proceedings between the plaintiff and the United States, Dr. Beatley sought to intervene in order to dispute the plaintiff's claim of negligence. He based his intervention on his right to protect his professional reputation from the plaintiff's charge of malpractice. The dis-

---

7. In ordering such a proceeding before trial the district court was following § 8.01–581.1 et seq., Code of Virginia, which governs the procedure in medical malpractice cases in the courts of that State, and which is equally applicable in diversity cases arising in that jurisdiction. *DiAntonio v. Northampton-Accomack Memorial,* 628 F.2d 287 (4th Cir. 1980); *Davison v. Sinai Hospital of Baltimore,* 462 F.Supp. 778 (D.Md.), aff'd., 617 F.2d 361 (1980). *See also, Feinstein v. Massachusetts Gen. Hosp.,* 643 F.2d 880 (1st Cir. 1981), to the same effect. For a general discussion of the validity and procedure under such statute, *see* Note, *Medi-*

*cal Malpractice Arbitration: A Comparative Analysis,* 62 Va.L.Rev. 1285 (1976).

7a. The United States has not raised the issue whether under Virginia law, the execution of a Covenant Not to Sue in favor of one tortfeasor releases all. We accordingly express no opinion on that issue. *See Wright v. Orlowski,* 218 Va. 115, 235 S.E.2d 349 (1977).

8. This procedure seems to have been in part at least an abandonment of the bifurcation provided in the district court's earlier order.

trict court denied the motion to intervene. After this denial the plaintiff presented some affidavits in support of what the district court described as "a prima facie case of Dr. Beatley's negligence." On the basis of such affidavits, the district court found that the plaintiff had made out his "prima facie" case of negligence, denied the United States the right to contest that finding, and awarded judgment in favor of the plaintiff, from which this appeal is taken.

■ We consider first the question of the liability of the United States. Liability of the United States rests upon the terms of the Federal Tort Claims Act (FTCA). That Act provides for "a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans,* 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976). As a waiver of sovereign immunity that Act must be strictly interpreted and applied in granting relief. *United States v. Sherwood,* 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941). It is plain the statute by its very terms applies only to the acts of government employees and explicitly eliminates from government liability thereunder acts of an independent contractor. *Brooks v. A. R. & S. Enterprises, Inc.,* 622 F.2d 8, 10 (1st Cir. 1980). Whether one is a government employee or an independent contractor under the Act—a critical question in many FTCA actions such as the present one—is a question of federal law. *Logue v. United States,* 412 U.S. 521, 528, 93 S.Ct. 2215, 2219–20, 37 L.Ed.2d 121 (1973); *LeFevere v. United States,* 362 F.2d 352, 353 (5th Cir. 1966); *Marival, Inc. v. Planes, Inc.,* 306 F.Supp. 855, 857 (N.D.Ga.1969). The Supreme Court in a number of decisions, particularly two recent ones, has adopted in effect the distinction made in the Restatement (Second) of Agency § 2 (1958), in determining under federal law whether the offending party was an employee of the United States or an independent contractor.

*United States v. Orleans, supra,* 425 U.S. 813, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390; *Logue v. United States, supra,* 412 U.S. 527, 93 S.Ct. 2219.

■ In *Logue* the Supreme Court said that the distinction between a servant relationship and that of an independent contractor, where the relationship is fixed by contract, turns "on the absence of authority in the principal to control the physical conduct of the [alleged employee] in [the] performance of the contract." Subsequently, in *Orleans* the Supreme Court repeated this statement of the distinction under the Act between a government employee and an independent contractor, saying:

> "A critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'"[9]

It would seem beyond controversy that, under these controlling authorities, only where the Government has the power under the contract to supervise a contractor's "day-to-day operations" and "to control the detailed physical performance of the contractor" can it be said that the contractor is an employee or agent of the United States within the intendment of the Act.

In applying *Logue* and *Orleans* to any contract to perform services on behalf of the United States, the contract and its terms in fixing the relationship of the offending party are critical. In this case the contract was one executed by the PHS in order to assure to seamen outpatient medical care at remote and little used ports by *private* practitioners. The authority for this practice of contracting for such services by a private party was provided in § 249(e), 42 U.S.C.; 42 C.F.R. § 32.11(b). Under the contract herein, Dr. Beatley, described in the contract as a "contract physician," was merely to furnish "outpatient" medical care to eligible PHS beneficiaries "in the same manner and of the same high quality as he provides such services for private patients" at the private clinic in Reedville, Virginia,

---

**9.** 425 U.S. 814, 96 S.Ct. 1976.

where Dr. Beatley was employed. Other than for this general statement, there was no provision in the contract purporting in any way to prescribe or control the manner of performance by the "contract physician" in furnishing outpatient medical services to PHS beneficiaries. Moreover, the contract authorized no control by the PHS over the drugs and medical supplies which, in the course of the treatment of a PHS patient, the "contract physician" might prescribe, though the contract did provide that, where available, the prescriptions for drugs should be taken "to a pharmacy under an agreement with the Public Health Service." Except in an emergency, the "contract physician" was to send any PHS patient who required hospitalization, diagnostic tests or extensive chemotherapy to the nearest PHS hospital (which in this case was at Norfolk, Virginia, some thirty miles from Reedville).

The "contract physician" was not required by the contract to maintain any prescribed office hours. He had the same right to refuse to treat PHS beneficiaries as he had to refuse private patients. The PHS furnished Dr. Beatley no office space, secretarial or nursing services, supplies or equipment; in fact, the contract expressly required Dr. Beatley to furnish all such services, supplies, equipment and office quarters.[10] He was to bill the PHS for such services as he rendered a PHS beneficiary under a fee schedule set forth in the contract; this fee schedule corresponded generally with the fee schedule used by Dr. Beatley in billing private patients. He was obligated to "maintain accurate medical records for each patient treated and execute all the necessary forms." He was, also, expected to familiarize himself with the PHS requirements to "Determine Eligibility of Applicants" and was not to provide any outpatient medical care to any applicant who did not present a "Master's Certificate of Service," completed by the "Master, Owner, or Agent of Last Vessel of Service." While representatives of the PHS did visit the "contract physician's" offices yearly, such visits involved no review of "day-to-day operations" of the "contract physician's" medical treatment of PHS patients but was confined to a review of the adequacy of the physician's medical facilities.

■ It would seem indisputable that, applying the test of power "to control the physical conduct of the [alleged employee] in [the] performance of the contract" in this case, Dr. Beatley was an independent contractor in rendering medical services to the plaintiff and the United States is not responsible for his negligence, if any, in the performance of such medical services. In fact, this conclusion seems inescapably to follow from the stipulation of the parties themselves, as summarized by the district judge, "that the PHS [whether under the contract or the practices of the parties to such contract] *does not* exercise control over or dictate the day-to-day medical judgment of Dr. Beatley in his provision of medical services to eligible PHS beneficiaries." The district court itself in effect concedes that at first blush "[t]his stipulation, in light of *Logue* and *Orleans*, would appear dispositive of the issue before the Court." The district court added, however, that it was "not so persuaded" and proceeded to set forth certain reasons for that conclusion. We disagree and find unconvincing the reasons assigned by it for its decision.

In reaching its contrary conclusion that the "contract physician" in this case was an employee of the United States, the district court, first, reasoned that the "control" test as established by *Logue* and *Orleans* was inapplicable to physicians and lawyers. The basis for this conclusion, as stated by the district court, was that neither a physician nor a lawyer could, under his respective canon of ethics, accept "external control over the exercise of his professional judgment" in the performance of professional services and that this was true whether "the physician [or lawyer] be termed designated, part-time, full-time, uniformed or ci-

---

10. This was natural since treatment of PHS patients was only to be a comparatively minor part of the "contract physician's" practice, which was to continue to be largely a private practice.

vilian." It accordingly proceeded to hold that in the unique situation presented in contracts with physicians, the relationship between the physician and the contracting party was determined not by the control over the performance of the medical services but by the control over the peripheral, administrative details which were incidental to the rendering of medical services. And it, after a review of various regulations covering the administrative details to be performed by Dr. Beatley under his agreement with PHS, arrived at the conclusion that Dr. Beatley was in this instance an employee of the United States.

In the first place, neither reason nor precedent supports the notion that the controlling principle as stated in *Logue* and *Orleans* is inapplicable to contracts governing the rendering of medical services by a physician. There is certainly no language in either *Logue* or *Orleans* supportive of this distinction under the FTCA between the relationship of physicians under a contract for services and that of all other contractees. Indeed, in both of those cases, the plaintiff sought, much as the district court has done here, to establish an employee relationship by relying on peripheral requirements under the contract rather than the control test as applied to the basic activity contemplated under the contract. But the Supreme Court refused to accept this reasoning. And in a recent related case, the Supreme Court has again repeated this "control" test, as formulated in *Logue*, in determining the matter of agency. Thus in *Polk County v. Dodson,* —— U.S. ——, 102 S.Ct. 445, 70 L.Ed.2d 559 (1981), this "control" test was used to determine whether a public defender assigned to defend a criminal defendant was an agent or employee of the County. And, significantly, the Supreme Court used the very reason assigned by the district court for its conclusion that the physician was a public employee for its conclusion that the public defender was not a public employee for whose malpractice the County would be liable.

Nor can it be reasonably argued in the light of both *Logue* and *Orleans* that the contract in this case contained provisions or details which could justify the result reached below. In fact, the various acts under the contract, relied on by the district court for its decision, are considerably less pervasive than those present in *Logue* and *Orleans*. In *Logue* there was a contract between the Government and a local County, under which the latter agreed by contract to house federal prisoners. In the contract the County bound itself to conform its custody and treatment of the federal prisoners to the "rules and regulations" of the federal agency charged with the custody of prisoners. These " 'rules and regulations governing the care and custody of persons committed,' " specified "standards of treatment for federal prisoners, including methods of discipline, rules for communicating with attorneys, visitation privileges, mail, medical services, and employment." The plaintiff found in these regulations such control by the federal government as to render the jailers federal employees in their performance under the contract. However, because the "agreement [with the County gave] the United States no authority to physically supervise the conduct of the jail's employees," the Supreme Court held that the County jail's employees were not federal employees for whose alleged misconduct in the control of the federal prisoners the United States was responsible under the FTCA.

Again, in *Orleans* the contract between the United States and the other party was subject to "extensive regulations which include[d] employment policies and procedures, lobbying limitations, accounting and inspection procedures, expenditure limitations, and programmatic limitations and application procedures." Yet none of these regulations or constraints was sufficient to create the other party an employee of the United States because the United States did not supervise the "day-to-day operations" of the other party to the contract.

*Brooks v. A. R. & S. Enterprises, Inc. supra,* is even stronger than either *Logue* or *Orleans,* and is another case illustrative of the same result. In that case the defendant was a corporation engaged by the United

States to provide security services at a naval base. One of its employees, while driving a Navy vehicle furnished him by the Navy under its contract with the defendant, negligently injured the plaintiff. The controlling issue in the case was whether A. R. & S. Enterprises was an employee of the Government or of an independent contractor. The contract between the Government and the defendant "governed in detail the duties of the A. R. & S. guards at the base." The Government, also, supplied all their equipment (except their uniforms) though even these were "subject to strict government specifications," including motor vehicles to make their rounds, such as the one involved in the accident. Moreover, the Navy "was authorized [under the contract] to conduct daily inspections of guard activities and to alter work assignments in accordance with the Navy's needs." Yet the Court had no difficulty in finding that A. R. & S. Enterprises was an independent contractor because " 'its day-to-day operations [were not] supervised by the Federal government.' " [11]

■ We think these cases make it clear that the real test is control over the primary activity contracted for and not the peripheral, administrative acts relating to such activity. If the Supreme Court found in the contract and the applicable administrative regulations in *Logue* and *Polk* the absence of that essential "control" for the creation of a relationship of employer-employee, it is manifest that a basis for a finding of such relationship in this case is unjustified. The defendant United States accordingly was entitled to judgment in its favor and the district court erred in ruling to the contrary. It is unnecessary, under these circumstances, to consider whether the Government was precluded from contesting on the merits the plaintiff's claim that Dr. Beatley was negligent in his treatment of the plaintiff. This action is accordingly remanded to the district court for the entry of judgment in favor of the United States.

11. 622 F.2d at 10.

In resolving the issue posed by Dr. Beatley's appeal, we find no legal basis for Dr. Beatley's motion to intervene. Any claim against him has been dismissed. We appreciate Dr. Beatley's concern that his professional conduct not be unfairly questioned by a finding of negligent professional conduct. But a finding based only on affidavits of one side, which is all the district court permitted in this case, does not amount to a valid finding of negligence. Dr. Beatley cannot, therefore, suffer any damage to his professional reputation from any invalid finding of negligence, made on the basis of untested and uncontested affidavits. For this Court a trial of the issue of negligence under these circumstances in which there could be no judgment against anyone would be beyond this Court's jurisdiction, *see, Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, —— U.S. ——, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), and would be an empty gesture, resulting in the trial of an issue that is moot.

Accordingly the action is remanded with directions to the district court to enter judgment in favor of the United States; the dismissal of Dr. Beatley's motion to intervene is affirmed.

REMANDED WITH DIRECTIONS.