**Reynold LEONE, As Administrator of the Estate of Andrea Leone, Also known as Andrea Held, Deceased, Frances S. Costigan (now known as Costigan–Leeds), as Executrix of the Estate of George B. Costigan, Jr., Deceased, Plaintiffs–Appellees,**

v.

**UNITED STATES of America, Defendant–Appellant.**

**No. 1297, Docket 90–6017.**

United States Court of Appeals, Second Circuit.

Argued May 11, 1990.

Decided July 30, 1990.

Thomas B. Almy, Sr. Aviation Counsel, U.S. Dept. of Justice, Washington, D.C. (Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., Andrew J. Maloney, U.S. Atty., E.D.N.Y., Brooklyn, N.Y., of counsel), for defendant-appellant.

Daniel M. Kolko (Milton G. Sincoff, Kreindler & Kreindler, New York City, of counsel), for plaintiffs-appellees.

Before ALTIMARI and MAHONEY, Circuit Judges, and POLLACK, District Judge.*

ALTIMARI, Circuit Judge:

In this case, we consider whether private physicians, who are designated by the Federal Aviation Administration ("FAA"), as Aviation Medical Examiners ("AMEs"), are "employees of the government" for purposes of the Federal Tort Claims Act ("FTCA" or "Act"), 28 U.S.C. §§ 1346(b), 2671 et seq. (1988). Defendant-appellant United States appeals from an interlocutory order, entered in the United States District Court for the Eastern District of New York (Dearie, *Judge*), denying its motion for summary judgment and granting plaintiffs-appellees' motion for partial summary judgment. *See Leone v. United States*, 715 F.Supp. 1182 (E.D.N.Y.1989).

Plaintiffs-appellees' decedents were passengers on a private airplane piloted by Irwin Small. En route, Small suffered a heart attack which resulted in the crash of the airplane and the death of all aboard. At the time of the accident, pilot Small held a current airman medical certificate which had been issued by FAA-designated AMEs. Plaintiffs-appellees commenced the underlying consolidated FTCA wrongful death actions against the United States complaining that the AMEs who examined Small and issued his airman medical certificate were negligent in failing to discover Small's true physical condition. The United States filed a motion for summary judgment, arguing that the AMEs, who were physicians engaged in the private practice of medicine, were not government employ-

ees, as defined by 28 U.S.C. § 2671, and, therefore, that the United States is not amenable to suit under the FTCA, *id.* § 1346(b). Plaintiffs-appellees filed a cross motion for partial summary judgment, seeking to strike the government's affirmative defense that the AMEs were not employees of the government. The district court denied the United States' motion and granted plaintiffs-appellees' cross motion, holding that the AMEs were "employees of the government" and were "acting on behalf of the government" for FTCA purposes. *Leone*, 715 F.Supp. at 1190.

The district court certified the issue for interlocutory appeal, and this Court granted the United States' petition for review pursuant to 28 U.S.C. § 1292(b) (1988). For the reasons discussed below, we reverse the judgment of the district court and remand with instructions to grant the defendant-appellant's motion for summary judgment.

## BACKGROUND

Pursuant to its statutory mandate to "insure the safety of aircraft," 49 U.S.C.App. § 1348(a) (1982), the FAA requires that no person act as a pilot of an aircraft unless in possession of, among other credentials, a current airman medical certificate. 14 C.F.R. §§ 61.3(c), 67.11 (1990); *see* 49 U.S.C.App. 1422(b)(1) (1982). To obtain an airman medical certificate, an applicant must undergo a medical examination and an evaluation of his medical history by an AME, and satisfy Federal Aviation Regulation medical standards. 14 C.F.R. § 67.11, 67.-13, 67.15, 67.17.

Although the Federal Air Surgeon and his authorized representatives are empowered to issue medical certificates, *id.* § 67.25(a), the certificates are predominately issued by private physicians who have been designated as AMEs, *id.* § 183.21 (1990); *see* 49 U.S.C.App. § 1355(a) (1982). The process of designating AMEs is admin-

---

* The Honorable Milton Pollack, United States District Court for the Southern District of New York, sitting by designation.

istered by the Federal Air Surgeon or his authorized representative. 14 C.F.R. 183.-11(a). The designation is effective for one year, is renewable for additional periods of one year, and may be terminated at the discretion of the FAA. *Id.* § 183.15(a) & (d). An AME applicant must be "a professionally qualified physician in good community standing, licensed to practice medicine in the state, foreign country, or area in which the designation is sought and must be engaged in full-time practice at a specified address." FAA Order 8520.2C, para. 9(a)(1) (1978) (revised 1981); *see also* 14 C.F.R. § 183.11. The vast majority of physicians designated as AMEs maintain private practices or are affiliated with hospitals.

AMEs are authorized to: (a) accept applications for physical examinations necessary for issuing an airman medical certificate; (b) conduct those physical examinations; and (c) issue, renew or deny airman medical certificates in accordance with Federal Aviation Regulations. *See* 14 C.F.R. § 183.21; *see also id.* § 67.25. Although the FAA maintains regional lists of AMEs, *see id.* § 67.23, an applicant for a medical certificate is responsible for contacting and scheduling an appointment with the AME of his choice. With limited exceptions, AMEs conduct examinations in their own offices and are required to have "adequate facilities for performing the required examinations and possess or agree to obtain" a variety of specialized medical equipment. FAA Order 8520.2C, para. 9(a)(3)(e). Each AME is responsible for setting an appropriate fee to be charged for the examination, and payment is made by the applicant directly to the AME. Further, the FAA provides no insurance and does not pay workers' compensation or social security taxes for the AMEs.

· AMEs act "[u]nder the general supervision of the Federal Air Surgeon," 14 C.F.R. § 183.21(b), and are referred to in Federal Aviation Regulations as "representatives of the [FAA]," *id.* § 183.1. It is the policy of the FAA to continually evaluate AMEs. The evaluation primarily consists of assessing: (1) the adequacy of information the AME provides on the medical examination forms; (2) the "error rate" in certification; (3) reports from the aviation community concerning the AMEs' professional performance and personal conduct; (4) attendance at seminars; (5) performance reports, including quarterly and annual performance summaries. FAA Order 8520.2C, para. 13(b).

To assist AMEs in the performance of their duties, the FAA provides each AME with the Guide for Aviation Medical Examiners ("the Guide"). The Guide is designed to provide all pertinent information and guidance needed to perform the duties and responsibilities delegated to each AME by the FAA. Included in the Guide are step-by-step instructions for reviewing medical certificate applications and conducting physical examinations of the applicants. The Guide also details the proper use of the FAA medical examination form.

In 1982 and again in 1984, three months before the ill-fated flight, pilot Small was examined and certified by AMEs as medically fit to be a pilot. The AMEs were both physicians engaged in the private practice of medicine and employed by medical centers. At the time of the examinations, Small suffered from heart disease as well as other medical ailments. In violation of explicit instructions, as well as federal law, 18 U.S.C. § 1001 (1988), Small failed to disclose the existence of these medical conditions on his certification application or in his discussions with the AMEs. The discovery of Small's maladies would have required the denial of his airman medical certificate. *See* 14 C.F.R. § 67.17(e). On this appeal, as in district court, the plaintiffs-appellees contend that under the FTCA the AMEs are government employees and the United States is therefore liable for their allegedly tortious conduct.

## DISCUSSION

■ The FTCA is a limited waiver of sovereign immunity making the Federal Government liable to the same extent as a private person for certain torts of employees of the government acting within the scope of their employment. 28 U.S.C.

§§ 1346(b), 2671. The Act defines "employee of the government" to include "officers or employees of any federal agency, members of the military or naval forces of the United States, ... and persons acting on behalf of a federal agency in an official capacity...." *Id.* § 2671. The FTCA waiver of sovereign immunity, however, does not extend to independent contractors. *Id.; see United States v. Orleans*, 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976). Thus, the central question on this appeal is whether the AMEs are FAA employees or independent contractors.

▉ Whether a person is a government employee or an independent contractor is a question of federal law. *Logue v. United States*, 412 U.S. 521, 528, 93 S.Ct. 2215, 2220, 37 L.Ed.2d 121 (1973). The Court in *Logue* and *Orleans* addressed the distinction. Both cases concerned allegedly negligent employees of government contractors. *Logue* involved a county jail that had contracted with the federal government to hold federal prisoners in custody. *Orleans* concerned a community action agency which was organized for the sole purpose of undertaking federal programs, which was funded entirely by the federal government, and all of whose activities were in compliance with government standards and regulations. At issue in both cases was whether the contractors were "federal agencies" or independent contractors. The FTCA's definition of "federal agencies" includes, *inter alia*, entities that are "acting as instrumentalities and agencies of the United States." 28 U.S.C. § 2671. The issue was critical because, in contrast to independent contractors, the FTCA's waiver of sovereign immunity extends to the negligent acts of employees of "federal agencies."

Applying principles of agency law, the Court in effect recognized that the term "federal agency" is synonymous with "servant or agent" of the government. *See Logue*, 412 U.S. at 527–28, 93 S.Ct. at 2219–20 (citing Restatement (Second) of Agency § 2 (1958)); *Orleans*, 425 U.S. at 814–15, 96 S.Ct. at 1976. The Court concluded that the contractors were not ser-

vants because the government lacked the authority "to control the detailed physical performance of the contract." *Logue*, 412 U.S. at 527, 528, 93 S.Ct. at 2219, 2220; *see Orleans*, 425 U.S. at 814, 96 S.Ct. at 1976; *accord* Restatement (Second) of Agency § 2. Therefore, the federal government was held not to be liable for the conduct of the contractors' employees.

As the district court noted, the relationship between the employees in *Logue* and *Orleans* and the AMEs in this case is not perfectly analogous. *Leone*, 715 F.Supp. at 1187–88. *Logue* and *Orleans* involved organizations, which the plaintiffs argued were federal agencies. The present case concerns individual AMEs, who the plaintiffs-appellees argue are employees of the government. Unlike the district court, however, we are unconvinced that this distinction alters the relevant analysis. Indeed, in contrast to *Logue* and *Orleans* which confronted terminology specific to the FTCA, *i.e.* "federal agency," we are presented with conventional agency relationships, *i.e.* employee (or servant) versus independent contractor. *See generally* Restatement (Second) of Agency §§ 2, 220. Similarly, we find no support in either statute or precedent for plaintiffs-appellees' contention that the reasoning of *Logue* and *Orleans* is inapplicable to physicians and other professionals. Neither *Logue* and *Orleans* nor the legislative history of the FTCA supports drawing an arbitrary distinction between professionals and other contractees. *See Wood v. Standard Products Co.*, 671 F.2d 825, 831 (4th Cir.1982); *cf. Polk County v. Dodson*, 454 U.S. 312, 321, 102 S.Ct. 445, 451, 70 L.Ed.2d 509 (1981) (applying principles of agency to determine whether an attorney was a public employee acting under color of state law). Accordingly, we believe that the strict control test, as well as principles of agency, govern this inquiry. *See Charlima, Inc. v. United States*, 873 F.2d 1078, 1080–81 (8th Cir.1989); *Cavazos v. United States*, 776 F.2d 1263, 1264 (5th Cir.1985); *Wood*, 671 F.2d at 829.

Confronting the strict control test, plaintiffs-appellees nonetheless argue that the AMEs are employees of the FAA. In par-

ticular, they emphasize that the FAA provides the AMEs with detailed guidelines for conducting medical exams and requires the use of specific equipment and examination techniques. The FAA regulations also set forth the medical standards the AMEs must apply in assessing each applicant for certification. Further, each AME acts under the Federal Air Surgeon's general supervision, *see* 14 C.F.R. § 183.21(b), and the FAA continuously evaluates the AMEs.

The plaintiffs-appellees, however, fail to appreciate that such detailed regulations and evaluations are an insufficient basis to satisfy the strict control test. *See Letnes v. United States*, 820 F.2d 1517, 1519 (9th Cir.1987). The question is not whether a contractor must comply with federal regulations and apply federal standards, but whether its day-to-day operations are supervised by the Federal Government. *See Orleans*, 425 U.S. at 815, 96 S.Ct. at 1976; *see also Charlima*, 873 F.2d at 1081; *Brooks v. A.R. & S. Enterprises*, 622 F.2d 8, 11 (1st Cir.1980). Thus, while the FAA acts generally as an overseer, it does not manage the details of an AME's work or supervise him in his daily duties. Indeed, neither the supervision provided by the Federal Air Surgeon nor the FAA procedures to evaluate the AMEs entail on-site review or day-to-day management. Accordingly, the FAA does not maintain the type of control over the AMEs that is required by *Logue* and *Orleans*.

A similar outcome follows when the AMEs' relationship to the FAA is analyzed in accordance with the Restatement (Second) of Agency. The Restatement, section 220(2), provides that in determining whether one acting for another is an employee or independent contractor, the following relevant factors are to be considered: the extent of control which, by agreement, the master may exercise over the details of the work; whether or not the one employed is engaged in a distinct occupation or business; the kind of occupation, with reference to whether the work is usually done under the direction of the employer or by a specialist without supervision; the skill required in the particular occupation; whether the employer or the workman supplies the instrumentalities, tools and the place of work; and the method of payment, whether by time or by the job. *See also* 1 L. Jayson, *Handling Federal Tort Claims* § 203.01, at 8–58 (1990).

The FAA, as discussed above, does not maintain control over the detailed physical performance of the AMEs. The individuals who serve as AMEs are professionally qualified physicians; most maintain their own private medical practices or are affiliated with hospitals. Each AME is free to examine as few or as many applicants as he desires. The AMEs obviously are specialists, who usually work without supervision. The performance of their duties clearly requires special skill and training. To that end, AMEs are responsible for being informed as to the progress of aviation medicine, Order 8520.2C, para. 9(a)(3)(a), and necessarily rely on their own professional judgment in making certification decisions. Each AME also must supply the instrumentalities, tools and the place of work. Additionally, each AME sets his own fee and is paid directly by the applicant. Also instructive is the fact that the FAA provides no insurance and does not pay workers' compensation or social security taxes for the AMEs. *See* 1 L. Jayson, *supra*, § 203.04, at 8–59. Viewed in toto, these factors demonstrate that AMEs are independent contractors and not employees of the government.

Finally, plaintiffs-appellees argue that AMEs should be considered employees of the government because they are acting on behalf of the FAA. Section 2671 of the FTCA states that "persons *acting on behalf of* a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation" are to be considered employees of the government. 28 U.S.C. § 2671 (emphasis added). Plaintiffs-appellees contend that because the AMEs are deemed "representatives of the [FAA]," 14 C.F.R. § 183.1, and are provided with an FAA identification card, they are acting on behalf of the government. We disagree.

Authorities that have discussed this clause indicate that it is designed to cover special situations such as government officials who serve without pay, or an employee of one government agency who is loaned to and works under the direct supervision of another government agency. *Logue,* 412 U.S. at 531, 93 S.Ct. at 2221; *accord* 1 L. Jayson, *supra,* § 203.04, at 8–75. The fact that an independent contractor holds a government I.D. card or that a federal regulation refers to the contractor as a "representative" does not satisfy our understanding of the meaning of the "acting on behalf of" clause. Moreover, to hold that this clause provides for FTCA liability, when there is inadequate control or other indications of an employee relationship, would seriously undermine the FTCA's independent contractor exemption. *Cf. Logue,* 412 U.S. at 532, 93 S.Ct. at 2221. We do not believe that such an extension of the FTCA's waiver of sovereign immunity is appropriate.

## CONCLUSION

Based on the foregoing, the order of the district court, denying the government's motion for summary judgment and granting plaintiffs-appellees' cross-motion for partial summary judgment, is reversed and the case is remanded with instructions to grant the defendant-appellant's motion for summary judgment.